UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MAURICE NEAL,

    Plaintiff

  v.

SERGEANT WEBB, *et al.*,

    Defendants.

CIVIL ACTION NO. 3:26-CV-01477

(MEHALCHICK, J.)

**MEMORANDUM**

Maurice Neal, incarcerated at SCI-Mahanoy, has filed a fee-paid complaint arising from an incident in which a prison officer allegedly referred to him with a racial epithet. Upon screening pursuant to 28 U.S.C. § 1915A, the Court finds that the only viable claims are First Amendment retaliation claims against two "John Doe" defendants. Accordingly, Neal will have 30 days in which to file an amended complaint. If he chooses not to file an amended complaint, the case will proceed against the John Doe defendants only.

I. **BACKGROUND AND PROCEDURAL HISTORY**

The complaint (Doc. 1) alleges as follows: On July 10, 2025, Neal was housed on F-Block at SCI-Mahanoy. Defendant Sgt. Webb instructed Neal to walk to C-Block to pick up two pillows, and issued Neal an inmate pass slip to do so. Neal alleges that Webb wrote "Loyal House Nigga" on the "assignment section" of the slip[1], which Neal initially did not notice. On C-Block, a sergeant on duty gave Neal the two pillows, signed and "wrote on" the slip, and gave it back to Neal, who returned to F-Block with the slip and the pillows.

---

[1] The complaint indicates that the slip is attached as "Exhibit A"; however, no exhibits were included with the complaint. *See* (Doc. 1).

On his way back to F-Block, Neal encountered C.O. Davis, who asked to see his pass slip. Davis, who is Black, asked about the assignment section of the slip: "What the fuck is this?" Neal told Davis that he had not noticed what Webb[2] had written and that he was offended by it. Neal feared that if he reported the incident, he would lose possession of the slip and be deprived of "written proof" of the incident. Ultimately, Davis "reluctantly agreed" to allow Neal to make photocopies of the slip, allegedly telling Neal: "Make sure you include me as a witness to this racist bullshit, because this ain't right."

On July 18, Neal filed a grievance about this incident. He alleges that on July 25, "as a result" of the grievance, Defendants John Does 1 and 2 searched his cell, during which they "intentionally and maliciously targeted [Neal's] paperwork." At one point during the search, Doe 1 left the cell to have a "brief conversation" with Webb, then returned to the cell. Ultimately, the Does confiscated copies of the pass slip and unspecified "copies related to" the subsequent grievance.[3] Neal never received a confiscation slip for the seized property. On February 12, 2026, roughly seven months after this incident, Neal was removed from F-Block, having been housed there for six continuous years. He claims that there was no "legitimate penological justification" for moving him from F-Block, and that he was moved in retaliation for his July 2025 grievance against Defendant Webb.

Neal asserts a Fourteenth Amendment equal protection claim against Webb on the basis that he "knowingly and intentionally singled out [Neal] as a class of one," and First

---

[2] Neal does not explain how he concluded that it was Webb, rather than the sergeant from C-Block, who wrote the offending remark, given that Neal did not notice the remark until both individuals had written on his pass.

[3] Neal alleges that this grievance, and two subsequent grievances arising from the events that followed, were denied at all levels of review.

Amendment retaliation claims and Fourteenth Amendment due process claims against Does 1 and 2. He alleges that his mental health "began to suffer and deteriorate as a result of Defendant Webb's targeted racism," which caused anxiety, stress, headaches, insomnia, weight loss, and required Neal to take unspecified medication. He requests monetary, declaratory, and injunctive relief.

## II.    28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended

complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien &*

*Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Neal's claims of constitutional violations fall under 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative

amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.    DISCUSSION

Neal describes his first claim as a class of one claim against Defendant Webb, on the basis that Webb "knowingly and intentionally singled out and targeted" Neal.[4] "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). While the conduct Neal ascribes to Webb is deplorable, Neal's allegations seem to imply discrimination because of his race, not because he was in a "class of one." Regardless, to state any kind of equal protection claim, Neal would have to allege that Webb treated him differently from similarly situated individuals. The complaint lacks any allegations about similarly situated individuals. Therefore, this claim will be dismissed without prejudice to clarifying allegations in an amended complaint.

Next, Neal asserts retaliation claims against the John Doe defendants. To state a prima facie case of First Amendment retaliation, a plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights,

---

[4] The Court has also considered whether the allegations against Webb could sustain a claim under the Eighth Amendment. However, courts have concluded that verbal abuse, including racial abuse more severe or persistent than that alleged here, is not actionable. *See, e.g.*, *Mickens v. Clark*, No. 1:24-CV-00190, 2025 WL 976701, at *10 (M.D. Pa. Mar. 31, 2025); *Hernandez-Tirado v. Lowe*, No. 3:14-CV-1897, 2017 WL 3433690, at *11 (M.D. Pa. Aug. 10, 2017); *Baylor v. Pennsylvania Dep't of Corr.*, No. 1:12-CV-0341, 2013 WL 521957, at *4 (M.D. Pa. Feb. 11, 2013).

and (3) the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)). Causation can be shown through "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016).

Although cell searches are "a routine part of prison life," the attendant confiscation of property "may nonetheless constitute an adverse action, if motivated solely by a retaliatory motive." *Hernandez-Tirado v. Lowe*, No. 3:14-CV-1897, 2017 WL 3433690, at *10 (M.D. Pa. Aug. 10, 2017). Construing Neal's allegations liberally, his complaint suggests that the Does searched his cell separately from any legitimate investigation of his grievance and permanently confiscated his documents on spurious grounds. Given that only seven days passed between the grievance and the search, Neal has plausibly alleged "unusually suggestive" timing that could support a claim of retaliation. *See*, *e.g.*, *Payne v. Stanbaugh*, No. 1:22-CV-2063, 2025 WL 287243, at *5-6 (M.D. Pa. Jan. 6, 2025) (permitting a claim of retaliatory mishandling of documents based on suspicious timing, despite prison's classification of the documents as "contraband") (citing *Jacobs v. Beard*, 172 F. App'x 452, 455 (3d Cir. 2006)). However, Neal's allegations about his prison transfer do not support a viable retaliation claim. He has not plausibly alleged facts explaining (1) how being transferred from one prison block to another was an "adverse action" that would deter an ordinary person from filing grievances; (2) how any named defendant was involved in the decision to transfer him; or (3) how the person(s) who transferred him in February 2026 would have been motivated by a grievance about an unrelated issue from seven months before.

Finally, Neal asserts a due process claim premised on defendants' failure to issue a confiscation slip for his seized documents, but no such claim is viable because he had an adequate post-deprivation remedy in the form of the prison grievance process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). His grievance was apparently unsuccessful, but his disagreement with the outcome of the grievance process does not indicate a violation of his due process rights. *See Simmons v. Szelewski*, 642 F. App'x 95, 97-98 (3d Cir. 2016); *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008); *Bethea v. DelBalso,* No. 3:19-CV-01713, 2020 WL 6082095, at *1-2 (M.D. Pa. Oct. 15, 2020) (allegations of improper confiscation procedures did not state a constitutional claim).

**IV.    CONCLUSION**

Neal will be granted 30 days to file an amended complaint, which must be an entirely new complaint that stands alone without reference to the original complaint. Alternatively, he may choose to stand on his original complaint. If he does not file an amended complaint, he will be permitted to take discovery from the Warden of SCI-Mahanoy to identify the John Doe defendants, and the case will proceed solely on his claims that those defendants confiscated his documents in retaliation for his grievance. An appropriate order follows.

**Dated: June 8, 2026**                     *s/ Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **United States District Judge**