**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

MAURICE NEAL,

Plaintiff

v.

SERGEANT WEBB, *et al.*,

Defendants.

CIVIL ACTION NO. 3:26-CV-01477

(MEHALCHICK, J.)

**MEMORANDUM**

Maurice Neal, currently incarcerated at SCI-Mahanoy, has filed an amended complaint stemming from an incident in which a prison officer allegedly subjected him to racial abuse. Upon screening pursuant to 28 U.S.C. § 1915A, Neal will be permitted to proceed on First Amendment retaliation claims against Defendants Sgt. Webb, John Doe 1, and John Doe 2, and equal protection claims against John Does 1 and 2.

## I. BACKGROUND AND PROCEDURAL HISTORY

After screening Neal's initial complaint (Doc. 1), the Court recognized viable First Amendment retaliation claims against the two John Doe officers but dismissed several other claims. *See* (Doc. 5, Doc. 6). Neal opted to file an amended complaint (Doc. 9).

In summary, the amended complaint alleges as follows: On July 10, 2025, Neal was housed on F-Block at SCI-Mahanoy. Defendant Webb instructed Neal to walk to C-Block to pick up two pillows, and issued Neal an inmate pass slip to do so. Webb further instructed Neal to "show the C-Block sergeant the back of the pass slip." On his way to C-Block, Neal "noticed that Defendant Webb had written 'Loyal House Nigga' on the assignment section of the pass slip." When Neal arrived, he gave the pass to Sergeant Mangino "and told him

that Defendant Webb said to read the back of the pass." Mangino allegedly "chuckled a bit, then wrote something on the back of the pass," specifically, the phrase "Love You Too Webb."[1]

On July 18, Neal filed a prison grievance about this incident. He alleges that on or about July 27, "as a result" of his filing this grievance, Defendants John Does 1 and 2 searched his cell, "during which they intentionally and maliciously targeted [Neal's] paperwork, searching for copies of the inmate pass slip." After this search, Doe 1 left the cell and spoke to Webb for approximately three to five minutes. Does 1 and 2 ultimately confiscated copies of the pass slip and the corresponding grievance. Neal requested a confiscation slip for the seized property, and Doe 2 told Neal he would receive one, but he never did. Neal's grievances about the incident and the subsequent search were denied at all levels of review. He alleges that various individuals involved in responding to the grievances (including Defendants Captain Dreher, Bernadette Mason, and Superintendent Sokaloski) failed to interview him, misquoted him, ignored or failed to review relevant video, or made unsupported factual findings.

"Throughout the summer of 2025," Neal's mental health "began to suffer and deteriorate" because of the events described above. On February 12, 2026, roughly seven months after these incidents, Neal was transferred away from F-Block, having been housed there for six continuous years "without incident." He claims that there was no "legitimate

---

[1] Neal has attached a document that he identifies as the pass slip in question. *See* (Doc. 9-1). The document generally comports to Neal's description.

penological justification" for moving him from F-Block, and that he was moved in retaliation for his July 2025 grievance against Webb.

Neal asserts claims under 42 U.S.C. §§ 1981, 1985, and 1986, and the First and Fourteenth Amendments, against Webb, Does 1 and 2, Dreher, Mason, and Sokaloski. He requests monetary, declaratory, and injunctive relief.

## II. 28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended

complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien &*

*Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Neal's claims of constitutional violations fall under 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative

amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. DISCUSSION

### A. SECTION 1981

First, Neal asserts a claim under 42 U.S.C. § 1981 against Webb for allegedly writing the phrase "Loyal House Nigga" on the pass slip. Section 1981 entitles any individual "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." *See* 42 U.S.C. § 1981(a). "To prove a claim of purposeful racial discrimination under [Section 1981, a] plaintiff must establish: (1) that he or she is a member of a racial minority; (2) defendant's intent to racially discriminate; and (3) that the discrimination pertained to an activity enumerated in Section 1981." *Watson v. Witmer*, 183 F. Supp. 3d 607, 615 (M.D. Pa. 2016) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)).

In this case, Neal has not alleged that he was limited in any of the activities described in Section 1981 because of Webb writing an offensive remark on the pass slip. The allegation that Webb racially abused Neal, although deplorable, does not itself sustain a Section 1981 claim. *See*, *e.g.*, *Mosley v. Bartle*, No. 23-CV-4169, 2023 WL 7329495, at *4 (E.D. Pa. Nov. 7, 2023); *Wright v. Whitehall Twp.*, No. 5:20-CV-02664, 2021 WL 100091, at *8 (E.D. Pa. Jan. 12, 2021) (claims of officer misconduct, "even when racially motivated[,] are not properly

cognizable . . . in the absence of a connection to one of § 1981(a)'s enumerated activities") (listing examples).[2]

B. Section 1985/Section 1986

Next, Neal asserts claims under 42 U.S.C. § 1985 and 1986 against Dreher, Mason, and Sokaloski, who were allegedly involved in addressing his grievances. As relevant here, Section 1985 prohibits actions taken by two or more persons "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To sustain a claim, a plaintiff must allege facts plausibly showing "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person, property, or the deprivation of any right." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). "To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Coulter v. Ramsden*, 510 Fed. Appx. 100, 103 (3d Cir. 2013). Section 1986 "provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." *Burgos v. Canino*, 641 F. Supp. 2d 443, 458 (E.D. Pa. 2009) (citing *Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3d Cir. 1980)).

---

[2] The Court previously considered whether Neal's allegations of racial abuse could sustain a claim under the Eighth Amendment. Courts have concluded that verbal abuse, including racial abuse more severe or persistent than that alleged here, is not actionable, and Neal does not attempt to renew that claim. *See* (Doc. 5 at 6, n.4 (listing cases)).

Neal claims that these defendants' alleged faults in addressing his grievances amount to a racially motivated "conspiratorial cover-up" of the incident in question. However, he has not pled facts showing that these defendants were acting in concert with each other or that their actions were motivated by racial discrimination. He cannot sustain Section 1985 claims by surmising that the wrongfulness of their alleged actions "shows" that they were conspiring and motivated by discriminatory animus.[3] *See Twombly,* 550 U.S. at 556-57 ("[W]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement . . . does not supply facts adequate to show illegality."); *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 685 (E.D. Pa. 2018) ("speculation and conjecture" of discriminatory motives for unlawful actions are insufficient). For the same reasons, Neal cannot state an attendant claim under Section 1986. *See*, *e.g.*, *Ronald v. Bank of Am.*, No. 3:15-CV-00815, 2016 WL 11452960, at *5 (M.D. Pa. Feb. 18, 2016).

C. First Amendment

As described in screening the prior complaint, Neal states viable First Amendment retaliation claims premised on the alleged retaliatory seizure of the pass slip and grievance documents.[4] Because the amended complaint supports a plausible inference that Webb[5] and

---

[3] *See*, *e.g.*, (Doc. 9 at 9, ¶ 36) (claiming that Dreher's alleged failure to review video "show[s] his intentional and malicious attempt to cover[ ] up" racial discrimination).

[4] Neal's allegations plausibly suggest that the defendants searched his cell "separately from any legitimate investigation of his grievance and confiscated his documents on spurious grounds . . . [and] Neal has plausibly alleged 'unusually suggestive' timing that could support a claim of retaliation." *See* (Doc. 5 at 6-7).

[5] The allegation that the Doe defendants spoke to Webb immediately following the search could support a plausible inference that Webb was personally involved in the decision to confiscate the documents. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (personal involvement may be inferred through "allegations of personal direction or of actual knowledge and acquiescence").

Does 1 and 2 were personally involved in the seizures of these documents, he may proceed against each of these defendants. However, Neal's allegations about his prison transfer do not support a viable retaliation claim. As before, he has not plausibly alleged facts explaining (1) how being transferred from one prison block to another was an "adverse action" that would deter an ordinary person from filing grievances; (2) how any named defendant was involved in the initial decision to transfer him; or (3) why the person(s) who transferred him would have been motivated by a grievance about an unrelated issue from seven months before. *See* (Doc. 5 at 7).

D. <u>FOURTEENTH AMENDMENT</u>

Neal asserts a variety of Fourteenth Amendment claims, beginning with a claim that Webb "knowingly and intentionally singled out and targeted [Neal] for racial discrimination" by writing the note on the pass slip. As before, Neal has not pled any facts showing that Webb treated Neal differently from similarly situated individuals, so Neal cannot sustain an equal protection claim on this basis. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). However, Neal's equal protection claims against Does 1 and 2 may proceed. Neal alleges that the cells of "similarly situated general population prisoners" are not searched when they file grievances, and further, that Does 1 and 2 denied him the receipt for his confiscated property given to other prisoners in similar situations. *See* (Doc. 9 at 11, ¶¶ 50, 52-53). Construed liberally, these allegations support equal protection claims on a "class of one" theory; *i.e.*, that the Doe defendants treated him differently from these similarly situated individuals with "no rational basis for the difference in treatment." *See Hill*, 455 F.3d at 239; *see*, *e.g.*, *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 404-05 (M.D. Pa. 2013).

As previously explained, Neal cannot pursue due process claims premised on the failure to issue a confiscation slip, because he had an adequate post-deprivation remedy in the form of the prison grievance process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). Neal's disagreement with the way his grievances were investigated or adjudicated is not equivalent to a violation of his due process rights. *See Simmons v. Szelewski*, 642 F. App'x 95, 97-98 (3d Cir. 2016); *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008); *see also Bethea v. DelBalso,* No. 3:19-CV-01713, 2020 WL 6082095, at *1-2 (M.D. Pa. Oct. 15, 2020) (allegations of improper confiscation procedures did not state a constitutional claim).

## IV. Conclusion

For the foregoing reasons, Neal will be permitted to proceed on First Amendment retaliation claims against Webb, Doe 1, and Doe 2, and Fourteenth Amendment equal protection claims against Doe 1 and Doe 2. All other claims will be dismissed. An appropriate order follows.

**Dated: October 2, 2026**

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States District Judge**